UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARDIAN PURINI,

Petitioner,

-against-

KIKA SCOTT,

Respondent.

25-CV-4195 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Petitioner Ardian Purini is a citizen of Kosovo who has been a lawful permanent resident of the United States for approximately ten years. He asks the Court to review and approve his application for naturalization, which was previously denied by USCIS. Because Petitioner has failed to fully exhaust his administrative remedies with the agency, however, the Court GRANTS Respondent's motion to dismiss.

**BACKGROUND**

Unless otherwise noted, the following facts are taken from the Petition, ECF No. 1 ("Pet."), and are presumed to be true for the purposes of this Order. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The Court also takes judicial notice of the stipulation and order in *Purini v. Jaddou*, No. 24-CV-6881 (S.D.N.Y. 2024) (NSR), Petitioner's related prior appeal to this District. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (explaining that courts may "take judicial notice of relevant matters of public record"); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."). Finally, where specified, the Court relies on the Government's letters to Petitioner, which are appended to Respondent's

Declaration in support of their motion. ECF No. 24; *see Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (explaining that a court may consider a document "integral" to the complaint on a motion to dismiss "where the complaint relies heavily upon its terms and effect," including a "legal document containing obligations upon which the plaintiff's complaint stands or falls" (internal citations omitted)); *see also Saleh v. Pastore*, No. 19-CV-11799 (KPF), 2021 WL 1640449, at *1 n.2 (S.D.N.Y. Apr. 27, 2021), *aff'd*, No. 21-1073, 2021 WL 4978574 (2d Cir. Oct. 27, 2021) (relying on exhibits appended to Defendants' memorandum of law in a similar naturalization case).

Petitioner Ardian Purini ("Purini" or "Petitioner") is a citizen of Kosovo who lives in Yonkers, New York. ¶ 4. He has been a lawful permanent resident ("LPR") of the United States for approximately ten years. ¶ 15. On September 3, 2019, Purini applied to be naturalized as a citizen of the United States. ECF No. 24-1 at 1. The following year, on August 24, 2020, U.S. Citizenship and Immigration Services ("USCIS") denied his Application for Naturalization. *Id.* Purini timely appealed. ¶ 16. But on October 1, 2021, USCIS denied his appeal. *Id.* Purini's application was denied because "USCIS believed he gave false testimony under oath." *Id.* Specifically, USCIS denied his application because he did not disclose that, in 2004, he was arrested and convicted in Kosovo for illegally possessing a weapon. *Id.*; ECF No. 24-2.

Almost exactly two years later, on October 5, 2023, Purini applied once again to become a naturalized United States citizen (the "Second Application"). ¶ 17. On February 6, 2024, USCIS interviewed him at its New York Field Office. ¶ 18. Afterwards, USCIS "found that Purini passed all the tests and otherwise met all the requirements for naturalization except" for one: "they determined that Purini was not lawfully admitted for permanent residence." *Id.* USCIS determined that Purini had failed to disclose a Kosovo criminal offense and conviction

when he had applied for lawful permanent residency—meaning he was ineligible for naturalization.[1] *Id.*; ECF No. 24-3. That same day, then, USCIS denied his application. ECF No. 24-3. When Purini timely appealed this denial, USCIS again denied his appeal. ¶ 20 (denying Purini's March 7, 2024 appeal on July 23, 2024).

Purini appealed USCIS's decision to this District. ¶ 21; *see Purini v. Jaddou*, No. 24-CV-6881 (S.D.N.Y. 2024) (NSR). His case came before Judge Nelson Román. *Id.* Before the Government answered, however, the parties stipulated that they would "remand th[e] matter back to USCIS so that Purini could be reinterviewed." ¶ 21. Specifically, the parties stipulated to the following: (1) that Purini had filed an Application for Naturalization, or "N-400," on October 5, 2023, which had been denied *inter alia* because Purini had not been lawfully admitted for permanent residence; (2) that Purini had then "filed a timely administrative appeal of USCIS's denial of the N-400 by filing a Request for a Hearing on a Decision in Naturalization Proceedings ("N-336")"; and (3) that USCIS had denied Purini's N-336 appeal and now "agrees to re-adjudicate Purini's N-400 filed on October 5, 2023." No. 24-CV-6881, ECF No. 24 ("Stipulation").

In their Stipulation, the parties further agreed that USCIS would move *sua sponte* "to reopen" its "decision denying the N-400" and would "interview Purini regarding his application" within sixty days of "reopening" his N-400. *Id.* ¶¶ 2–3. Within 120 days of that "interview regarding his application for naturalization," USCIS would "issue a decision regarding [Purini's]

[1] Purini admittedly did not disclose this prior conviction. According to Purini, his attorney in Kosovo had told him that his 2004 offense had been "wiped from his records," so Purini believed that the offense "no longer existed" and therefore did not need to be disclosed. ¶ 18. The offense was expunged in 2013. ¶¶ 16, 18; ECF No. 24-2 at 2–3. When Purini applied for naturalization (as opposed to lawful permanent residency), he did disclose the offense and provided USCIS with "all of the documentation" the agency requested. ¶ 19.

application." *Id.* ¶ 4. The parties stipulated that "USCIS shall not deny Purini's N-400 filed on October 5, 2023, based solely on a finding that Purini was not lawfully admitted for permanent residence." *Id.* ¶ 6. Should USCIS fail to issue a decision within 120 days, the parties stipulated, Purini was authorized to request a hearing before a district court under 8 U.S.C. Section 1447(b). *Id.* ¶ 4. If USCIS approved Purini's application, the agency agreed to "issue a notice to Purini scheduling administration of the oath of citizenship" within 45 days. *Id.* ¶ 5. But the parties did not stipulate what would happen should Purini's application be denied. *See generally* Stipulation.

On April 8, 2025, USCIS reinterviewed Purini. ¶ 21. The same USCIS officer that had interviewed him in 2021 conducted the interview. *Id.* Then, on April 16, 2025, USCIS denied his application—"for allegedly lying under oath." ¶¶ 21–22. In its letter notifying Purini that his application had been denied, USCIS explained that the agency had "reopened [Purini's] Form N-400 and scheduled [him] to appear for an interview," but that it "must deny [his] Form N-400 application." ECF No. 24-5 at 2, 5. "If you believe that you can overcome the grounds for this denial," USCIS continued, "you may submit a request for a hearing on Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings, within 30 calendar days of service of this decision (33 days if this decision was mailed)." *Id.* at 5. "Without a properly filed Form N-336," the agency relayed to Purini, "this decision will become final." *Id.* Purini appealed USCIS's decision to this District. ¶ 22; ECF No. 1.

On May 19, 2025, Purini filed his Petition before this Court, seeking a *de novo* review of his Second Application and requesting that the Court grant his application for naturalization. Pet. at 11. On August 4, 2025, the parties submitted a joint status letter explaining that they had met and conferred the previous week "to discuss anticipated dispositive motions, discovery, and referral to alternate dispute resolution." ECF No. 18. The parties proposed a briefing schedule for

the instant motion to dismiss, which the Court adopted. ECF Nos. 18–19. On September 24, 2025, Respondent filed its motion to dismiss, arguing that Petitioner failed to exhaust administrative remedies. ECF No. 22; *see also* ECF No. 23 ("Mem. of Law"). Petitioner opposed the motion on October 13, 2025. ECF No. 25 ("Opp."). Respondent replied on October 24, 2025. ECF No. 26 ("Reply").

For the reasons stated below, the Court finds that Petitioner has not exhausted his administrative remedies and cannot waive the exhaustion requirement. Therefore, the Court GRANTS Respondent's motion to dismiss.

**LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

Respondent argues that Purini's Petition must be dismissed because Purini failed to exhaust his administrative remedies as required under the Immigration and Nationality Act ("INA") and as amended by the Immigration Act of 1990. Mem. of Law at 6. Pursuant to 8 U.S.C. Section 1421(c), Respondent contends, an applicant for naturalization may only seek *de novo* review of their application "*after* they have exhausted administrative remedies"—namely, by "filing a Form-N-336 within thirty days as instructed in USCIS's April 16, 2025 Notice of Denial." Mem. of Law at 6–7. Petitioner responds that he did exhaust his administrative remedies because his Second Application was previously subject to a N-336 hearing. Opp. at 4. Alternatively, if the Court finds that he did fail to exhaust his administrative remedies, Petitioner argues that the Court has the authority to waive—and should waive—Section 1421(c)'s exhaustion requirement. Opp. at 3. Another N-336 hearing "would be futile and [would] just delay the process," Petitioner explains. *Id.*

The Court first sets out the requirements for naturalization under the INA. Next, it finds that Petitioner has failed to exhaust his administrative remedies under those requirements prior to filing the instant suit, warranting dismissal. Finally, the Court concludes that it cannot waive Section 1421(c)'s exhaustion requirement.

### I. The Naturalization Process

"The Constitution grants Congress the power to establish a 'uniform Rule of Naturalization.'" *Saleh v. Pastore*, No. 19-CV-11799 (KPF), 2021 WL 1640449, at *5 (S.D.N.Y. Apr. 27, 2021), *aff'd*, No. 21-1073, 2021 WL 4978574 (2d Cir. Oct. 27, 2021) (quoting U.S. Const., art. I, § 8, cl. 4). "Prior to October 1, 1991, applicants for citizenship applied for naturalization in federal district courts." *Id.* (citing *Chan v. Ganter*, 464 F.3d 289, 290 (2d Cir.

2006)). After Congress passed the Immigration Act of 1990, Pub. L. No. 101-649, Title IV, 104 Stat. 4978 (1990), however, "sole authority to naturalize persons as citizens of the United States [was] conferred upon the Attorney General." 8 U.S.C. § 1421(a). "The Attorney General, in turn, 'delegated that authority to USCIS.'" *Kaibanda v. USCIS*, No. 21-CV-5953 (JPC), 2022 WL 2195345, at *5 (S.D.N.Y. June 17, 2022) (quoting *Rivera v. USCIS*, 5 F. Supp. 3d 439, 441 (S.D.N.Y. 2014)).

"To be eligible for naturalization, an applicant must satisfy several requirements set forth in both the INA and associated regulations." *Nazari v. Quintana*, No. 22-CV-9812 (RA), 2023 WL 4706593, at *2 (S.D.N.Y. July 24, 2023). These requirements include: (i) "maintaining five years' lawful permanent residence, physical presence in the United States for at least half of that time, and continuous residence from the date of application until admission to citizenship," (ii) "submitting an application," including a Form N-400, (iii) "passing a background check," (iv) "passing a test of English proficiency and of knowledge of U.S. history and government," (v) "being examined under oath by an immigration official," and (vi) "taking an oath of allegiance to the United States in a public ceremony." *Escaler v. USCIS*, 582 F.3d 288, 289–90 (2d Cir. 2009) (internal quotation marks and citations omitted).

"[I]f USCIS denies a naturalization application upon an initial determination, the applicant may request a Form N-336 hearing." *Saleh v. Pastore*, 2021 WL 1640449, at *5 (citing 8 U.S.C. § 1447(a)). "This hearing serves as an administrative appeal of USCIS's initial determination, and it is conducted by an independent naturalization officer." *Id.* (citing 8 C.F.R. § 336.2(b)). If "USCIS affirms its denial of a naturalization application" following a Form N-336 hearing, "the applicant may seek judicial review of that denial . . . in the district in which that applicant resides." *Id.* at *6 (citing 8 U.S.C. § 1421(c)).

In particular, Section 1421(c) of the INA provides that "[a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides . . . ." 8 U.S.C. § 1421(c). "Section 1447 of Title 8 provides for the administrative appeal of an initial denial of a naturalization application"—in other words, a Form N-336 hearing. *Donnelly v. Controlled Application Rev. & Resol. Program Unit*, 37 F.4th 44, 48 (2d Cir. 2022). Critically, however, "Section 1421(c) . . . requires the exhaustion of administrative remedies prior to seeking [judicial review]." *Escaler*, 582 F.3d at 292; *see also Moya v. DHS*, 975 F.3d 120, 127 (2d Cir. 2020) ("Section 1421(c)'s exhaustion requirement is 'mandatory,' and [plaintiffs] may not sue until they have satisfied it." (quoting *Bastek v. Fed. Crop Ins. Co.*, 145 F.3d 90, 94 (2d Cir. 1998)).

"Thus, before [Petitioner] could seek review in the district court, he had to 'exhaust available administrative review procedures.'" *Donnelly*, 37 F.4th at 52 (quoting *Escaler*, 582 F.3d at 292). The question is whether or not he did so.

## II. Petitioner Did Not Exhaust His Administrative Remedies and the Court Cannot Waive the INA's Exhaustion Requirement

Petitioner failed to properly exhaust his administrative remedies under Section 1421(c). "'The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law' and serves 'two main purposes.'" *Donnelly*, 37 F.4th at 52 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006)). "First, exhaustion protects administrative agency authority by giving an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court and by discouraging disregard of the agency's procedures." *Id.* (cleaned up). "Second, exhaustion promotes efficiency by resolving

claims out of court and by producing a useful record for subsequent judicial consideration." *Id.* (internal quotation marks omitted).

Here, Petitioner's actions (or lack thereof) demonstrate that he has not fully exhausted his administrative remedies. As an initial matter, the parties do not dispute that USCIS held a Form N-336 hearing on July 23, 2024, after Petitioner filed his Second Application. Pet. ¶ 20; *see generally* Mem. of Law; Opp. Importantly, Petitioner did not file a Form N-336 after USCIS again denied his naturalization application on April 16, 2025; instead, Petitioner filed the instant suit. Pet. ¶¶ 21–22; *see* Mem. of Law; Opp. Pursuant to the text, then, Petitioner has not exhausted all of the administrative remedies available to him. Indeed, USCIS explicitly stated in its April 16, 2025 letter that it was denying his "Form N-400 application" and that, if Petitioner "believe[d] that [he could] overcome the grounds for this denial, [he could] submit a request for a hearing on Form N-336." ECF No. 24-5 at 5. "Without a properly filed Form N-336," the agency made clear, its denial of his application "will become final." *Id.* Still, Petitioner decided not to file Form N-336.

Petitioner's only argument that he exhausted his administrative remedies is to point to a prior appeal of his application. *See* Opp. However, *Donnelly v. Controlled Application Rev. & Resol. Program Unit* addresses this precise factual scenario. 37 F.4th 44 (2d Cir. 2022). In *Donnelly*, a citizen of Ireland applied for naturalization multiple times and was denied multiple times. *See id.* at 49–51. After USCIS denied his application a second time, Donnelly administratively appealed the decision. *Id.* at 49. USCIS affirmed its denial. *Id.* So, Donnelly petitioned the federal district court pursuant to Section 1421 seeking a different result. *Id.* This is where the two cases become especially similar: In *Donnelly*, as in this case, the parties next "stipulated to a dismissal of the action without prejudice . . . [wherein] USCIS agreed to reopen

*sua sponte* Donnelly's naturalization proceeding and to 'not deny [Donnelly's] application for naturalization based solely'" on the reason it had been previously denied. *Id.* at 49–50 (quoting *Donnelly v. Coven*, No. 17-CV-321 (S.D.N.Y. Nov. 16, 2017), ECF No. 28); *compare id. with* Stipulation (agreeing "to reopen" the agency's "decision denying the N-400" and stipulating that "USCIS shall not deny Purini's N-400 . . . based solely on a finding that Purini was not lawfully admitted for permanent residence").

Tellingly, once the parties stipulated to dismiss their initial case and "reopen[ed]" Donnelly's application, the Second Circuit explained that Donnelly "went through the process again." *Donnelly*, 37 F.4th at 50. Donnelly's prior N-336 hearing, in other words, was not controlling. *See id.* As was the case here, USCIS then reinterviewed Donnelly. *Id.* And, as happened here, USCIS again denied Donnelly's application for naturalization. *Id.* However, by contrast to Petitioner, Donnelly next filed a Form N-336 appealing the denial; Donnelly's issue arose when he did not appear at his hearing. *Id.* at 50–51.

Ultimately, the Second Circuit held that "Donnelly failed to satisfy § 1421(c)'s exhaustion requirement when he did not appear at the hearing." *Id.* at 53. As quoted above, the Second Circuit reasoned that Donnelly's failure to attend his hearing—even after scheduling it—undercut the two principles central to the doctrine of exhaustion of administrative remedies. *See id.* at 52–53. The Court of Appeals remained "unconvinced that Donnelly's act of filing a fully briefed notice of appeal" alone "satisfie[d] § 1421(c)'s exhaustion requirement." *Id.* (internal citations omitted). It is difficult to see, then, how Petitioner's failure to even request such a hearing could satisfy the same exhaustion requirement. And Petitioner certainly cannot rely on the appeal during a separate process to argue he exhausted his remedies in this process.

Accordingly, the Court concludes that Petitioner failed to exhaust his administrative remedies pursuant to Section 1421(c).

Petitioner attempts to avoid this result by arguing the futility of the exhaustion process as applied to him. Opp. 5-6. However, Petitioner's arguments do not move the needle. Petitioner's decision to forgo another N-336 hearing served neither of the purposes that undergird the doctrine of exhaustion of administrative remedies. First, USCIS "provided [Petitioner] with an opportunity to attend a hearing before an immigration officer" where his "claims may have succeeded on administrative appeal." *Donnelly*, 37 F.4th at 52–53. No matter how small the likelihood of success may have been at such a hearing, "[b]y failing to [schedule and] appear at the hearing," Petitioner "deprived the agency of 'an opportunity to correct its own mistakes' and 'disregard[ed] . . . the agency's procedures.'" *Id.* at 53 (quoting *Woodford*, 548 U.S. at 89, 126); *see also McKart v. United States*, 395 U.S. 185, 194 (1969) ("[S]ince agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise.").

Moreover, after completing the Form N-336 and attending the subsequent hearing, the Petitioner would have been afforded additional process prior to application denial becoming final. Specifically, "additional procedures would have been available for him to develop and the agency to resolve his claim." *Donnelly*, 37 F.4th at 53. Indeed, the immigration officer would have had the authority to conduct a *de novo* hearing, in which the "officer 'may receive new evidence or take such additional testimony as may be deemed relevant to the applicant's eligibility for naturalization or which the applicant seeks to provide.'" *Id.* (citing 8 C.F.R. § 336.2(b)). Thus, contrary to Petitioner's contention, the Court cannot find that exhausting his administrative remedies would have been futile. *See id.*

Similarly, Petitioner's "failure to [schedule and] attend the hearing also undermined the purpose of § 1421(c) to promote efficiency." *Id.* The Second Circuit has "observed that Congress 'permitted applicants to petition the district court only after the application has already been reviewed by the INS' in order 'to minimize the strain on judicial resources.'" *Id.* (quoting *Moya*, 975 F.3d at 134). Again, had Petitioner scheduled and "attended his hearing, he might have obtained relief without coming to the district court." *Id.*

Finally, Petitioner argues that even if he failed to exhaust his administrative remedies, the Court should waive Section 1421(c)'s exhaustion requirement and deny Respondent's motion. *See* Opp. at 3. But *Donnelly* also makes clear that the Court cannot do so. Even though Section 1421(c)'s exhaustion requirement is a "mandatory claim-processing rule, not a jurisdictional one," the Second Circuit has explained that "[m]andatory claim-processing rules are mandatory." *Id.* at 53–54; *see id.* at 56 ("Section 1421(c)'s exhaustion requirement is statutory, and therefore it is mandatory."); *see also Escaler*, 582 F.3d at 292 (explaining that Section 1421(c)'s "exhaustion requirement . . . is 'mandatory, and courts are not free to dispense with [it].'" (quoting *Bastek*, 145 F.3d at 94)). Additionally, as is evident from the underlying facts in *Donnelly* and contrary to Petitioner's argument, that Petitioner initially exhausted his administrative remedies before appealing to this District the first time does not result in exhaustion once USCIS "reopen[ed]" and "re-adjudicat[ed]" his application. Stipulation; *see* 37 F.4th at 49–50, 52–53.

Simply put, as the Court of Appeals reasoned, "because [Donnelly] did not comply with § 1421(c) and the government has not waived its requirements, Donnelly cannot state a claim." *Id.* at 53. The same is true here. Because Petitioner did not comply with Section 1421(c) and the

government has not waived its requirements, Petitioner has failed to state a claim. The Court cannot and does not dispense with Section 1421(c)'s exhaustion requirement.

"Accordingly, [Petitioner's] claims must be dismissed." *Dawlah v. Jaddou*, No. 23-CV-9538 (CS), 2024 WL 4728979, at *4 (S.D.N.Y. Nov. 8, 2024) (citing *Moya*, 975 F.3d at 124). However, "it is conceivable that the agency could reopen [Petitioner's] naturalization proceedings and afford him another opportunity to exhaust his administrative remedies." *Donnelly*, 37 F.4th at 57. Indeed, "failure to exhaust administrative remedies is often a temporary, curable procedural flaw." *Id.* (quoting *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (alteration omitted)). Therefore, the Court dismisses Petitioner's claims without prejudice. *See id.*; *Dawlah v. Jaddou*, 2024 WL 4728979, at *4.

**CONCLUSION**

Because Petitioner failed to timely file Form N-336, and because the Court cannot and does not dispense with the Section 1421(c)'s exhaustion requirement, the Court GRANTS Respondent's Motion to Dismiss. The Court dismisses Petitioner's claims without prejudice.

The Clerk of Court is respectfully directed to terminate ECF No. 22 and to close the case.

Dated: September 28, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge